Jones, J.
The argument attacking the constitutionality of this ordinance is based upon two grounds: (1) That it was class legislation of unequal operation and discriminatory in character; (2) That the ordinance delegated to an adminis *272 trative officer of the city legislative and judicial powers.
It is conceded that the city in the reasonable exercise of its police power had the right to regulate public laundries as a measure of public safety and for the protection of the health of employes and of the public. The first ground of attack is urged for the reason that section one of the ordinance is arbitrary, unreasonable and amounts to a discrimination between persons doing the same business, in that the ordinance is made applicable only to those laundering articles for thirty or more owners of such articles per week, and for pay. Diversity of patrons was the basis adopted by the legislative policy of the city in making this classification. Concededly the city had the right to enlarge or lessen the scope of this classification and apply it to hotels doing a considerable business; but the court is not warranted in substituting its own judgment as to the scope of classification unless the latter clearly appears to be unwarranted and unreasonable. Conceding that the city had, in the exercise of its police power, the right to impose regulations that were necessary for the protection of the public health, the ordinance does not become invalid because it does not cover the whole field of possible abuse. (Hall, Supt. of Banks, v. Geiger-Jones Co., 242 U. S., 539.) The provisions of the ordinance in question are not an unreasonable exercise of the police power, are not discriminatory, but operate uniformly and geographically upon the class stipulated in the ordinance, *273 and this case is therefore distinguishable from the Ohio cases relied upon by the plaintiff in error.
The constitutional validity of the ordinance is also attacked for .the reason that the same grants to an administrative officer arbitrary legislative and judicial powers, and this because it imposes upon the health commissioner, as a prerequisite to the issuance of a license, the duty of ascertaining whether the sanitary and drainage arrangements are sufficient to protect the public health and whether “adequate ventilation” and “adequate plumbing and drainage facilities” have been provided. It is claimed that these features of the ordinance are left to the arbitrary judgment of an administrative officer, and that no fixed standard has been provided as a guide for official action and for the information due those operating public laundries.
It is now generally held that quasi-judicial duties and administrative functions may be imposed upon administrative officers for the purpose of ascertaining the conditions under which the law or ordinance becomes effective. It will not be presumed that the action of the administrative officer will be either arbitrary or unwarranted. Should it so prove to be, the aggrieved person would have the right to relief through the courts. But it is said that the ordinance has fixed no standard for official guidance, but has left the sanitary arrangements and ventilation of each public laundry to the untrammeled judgment of the health commissioner for determination whether such are sufficient and *274 adequate. It is exceedingly doubtful whether a fixed standard could be adopted by the city in its regulation of those features. What would prove to be sufficient and adequate in one public laundry might be entirely insufficient and inadequate in another. And any attempt to provide by law for the multitudinous details defining what would be sufficient and adequate measures of regulation, applicable to each and every laundry falling within the class mentioned, would seriously tax legislative ingenuity. But it is now generally held that discretionary powers may be lodged in administrative officers to determine whether the terms of a law or ordinance of this character have been complied with, and that such “terms like other general terms get precision from the sense and experience of men.” That there is ample support for this principle is furnished by the two following federal cases, originating in this state, wherein practically every question here made was decided: Mutual Film Corporation v. Industrial Commission of Ohio, 236 U. S., 230, and Hall, Supt. of Banks, v. Geiger-Jones Co., 242 U. S., 539. In the first-named case the legislature left to the judgment and discretion of a board of censors the approval of such films only as the board might find to be “moral, educational or amusing and harmless in character.” In the second case the legislative act required the executive officer, as a condition of a license, to be satisfied of the good or bad business repute of the applicant for a license. Both acts were sustained by the supreme court of the United States. The principles involved in those *275 cases are similar to the ones here in controversy. Like questions were involved and decided in favor of these legislative powers in the following cases: Gundling v. Chicago, 177 U. S., 183; Red “C” Oil Manufacturing Co. v. Board of Agriculture of N. C., 222 U. S., 380, and People of State of N. Y., ex rel. Lieberman, v. Van de Carr, Warden, 199 U. S., 552.
We, therefore, hold that the features of the ordinance complained of violated neither the state nor the federal constitution. The judgment of the court of appeals is affirmed. .

Judgment affirmed.

Nichols, C. J., Matthias, Johnson, Donahue, Wanamaker and Robinson, JJ., concur.