## YOUNG v. SOUTHERN PAC. CO.

Circuit Court of Appeals, Second Circuit. June 17, 1929.

No. 313.

Dudley F. Phelps, of New York City (Frank M. Swacker and H. F. O'Donnell, both of New York City, of counsel), for appellants.

Humes, Buck & Smith, of New York City (Gordon M. Buck, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge. This suit was begun on May 10, 1926, in the New York state court, by a citizen of the state where appellee is incorporated, and a citizen of the District of Columbia. It was removed to the District Court, because it was held that the suit was not one containing several causes of action, but several separate suits united under the state practice, and only the causes of action of those plaintiffs were removed in which there was the requisite diversity of citizenship. This eliminated two assignees of stock and enjoined the present appellants from further proceeding in the state court. This court affirmed the order of removal. Young et al. v. Southern Pac. Co., 15 F.(2d) 280. After affirmance, the appellants moved to discontinue their suit in the District Court, which motion was granted below, but the order was reversed by this court. Young et al. v. Southern Pac. Co., 25 F.(2d) 630.

The complaint alleges that in Southern Pac. Co. v. Bogert, 250 U. S. 483, 39 S. Ct. 533, 63 L. Ed. 1099, a decree was entered adjudging that plaintiffs similarly situated, to these plaintiffs, were entitled to possession of a portion of the new stock issued by the defendant in the reorganization of its railroad upon surrendering their old stock and upon their paying a certain net sum. It is urged that the Bogert suit was brought on behalf of all other minority stockholders, but it appears from an examination of the complaint that it was brought on behalf of those "similarly situated and who may come in and contribute to the expenses of the action." None of the stock here represented was in the prior litigation, and some of the plaintiffs were refused permission to become partners in the Bogert suit.

In 1888, the Houston & Texas Central Railroad Company was organized and new securities issued. The appellants seek by this suit to impress a trust upon a portion of the stock issued by the new Houston & Texas Central Railroad Company which reached the hands of the appellee. In Southern Pac. Co. v. Bogert, 250 U. S. 483, 39 S. Ct. 533, 63 L. Ed. 1099, minority stockholders sued the railroad company whose property had been sold under foreclosure to the appellee. The appellee controlled the majority of the stock. It was decreed that the plaintiffs there were entitled to receive stock in the reorganized corporation, on surrender of their original stock and payment to the appellee of the amounts expended for the benefit of the reorganized corporation. The appellee was held to be entitled to a credit for the amount of the claims against the original corporation which were, in fact, held by it, and which were inferior to the debt foreclosed and was lost by foreclosure proceeding. It was also held that the appellee was not entitled to subsequent acquisitions by the reorganization of branch lines and coal mines, since they were but improvements had after they had been acquired, and whatever value there might be therein was reflected in the value of the new stock, and that the loss resulting was similarly represented. It was held that the minority stockholders of the class were not entitled as a matter of right to intervene in the stockholders' action and claim the benefits of the suit after final decree had been entered, and the final effect of the decree was not destroyed by an appeal therefrom, which resulted in the remand for further determination of the amounts to be paid by the stockholders.

In Bogart v. Southern Pac. Co., 290 F. 727 (C. C. A. 2d), certiorari denied in 263 U. S. 708, 44 S. Ct. 36, 68 L. Ed. 517, minority stockholders who did not intervene in the suit were held not to be entitled to intervene as a matter of grace after the decree establishing such rights had been entered, because their demands were stale, having existed for

more than 30 years, and that they were guilty of laches in enforcing them. After the decision in the Bogert Case, stockholders including Fitch and O'Reilly, executors of Arens, plaintiffs in this suit, deposited their shares in the old company with a committee of minority stockholders.

In denying permission to intervene in the Bogert Case, because of laches and staleness, we said that all those who desired to intervene there "belong to the class of attempting intervenors, whose rights were passed upon" in the Bogert Case. No explanation is made for the delay to attempt to intervene in the Bogert Case, or the failure to deposit with the stockholders' committee the stock upon which these appellants now sue. During 25 years, five of their suits were unsuccessful.

■ A motion was made below, and sustained, dismissing the complaint because it appeared on the face thereof that the plaintiff had been guilty of inexcusable laches. Even prior to equity rule 29, providing that "every defense in point of law arising upon the face of the bill, whether for misjoinder, nonjoinder, or insufficiency of fact to constitute a valid cause of action in equity, which might heretofore have been made by demurrer or plea, shall be made by motion to dismiss or in the answer," it was well settled that when it appeared on the face of a bill of complaint that the plaintiff was guilty of laches, a demurrer would lie. Hays v. Port of Seattle, 251 U. S. 233, 239, 40 S. Ct. 125, 64 L. Ed. 243; Speidel v. Henrici, 120 U. S. 377, 387, 7 S. Ct. 610, 30 L. Ed. 718; Alexander v. Fidelity Trust Co. (D. C.) 215 F. 791. Under this rule it may likewise be considered. The allegations of the bill declared that, more than 40 years ago, the reorganization in question took place, and it was by the terms of that reorganization that the appellants were injured. It further appears that the company in which the appellants held the stock owned no property, transacted no business, held no stockholders' meetings since 1888, and had no place of business since 1890; that a minority protective committee was formed, on the entry of the foreclosure decree, 40 years ago.

■ By an amendment to the bill, it is alleged that others were allowed to intervene in the Bogert Case. This is no excuse for the long delay and appellants' inactivity. In the Bogert Case, the bill alleged sufficient details of the activity of the plaintiffs there to excuse the long delay. Nothing in this bill suggests appellants' connection with the Bogert Case, except the unsuccessful attempt to intervene. This prior litigation does not excuse the delay of the appellants, for they were not parties. Cressey v. Meyer, 138 U. S. 525, 11 S. Ct. 387, 34 L. Ed. 1018. During this long period, the bill alleges, the stock increased to great value. The reorganization agreement, attacked by the bill of complaint, shows that unsecured debt creditors were offered stock in the new company for their indebtedness, if they paid the expenses of the reorganization. None accepted this offer. The reorganization expenses amounted to $26 per share. In the Bogert Case the final decree, made pursuant to the Supreme Court's mandate, required $60 per share in order to acquire the new stock. Creditors to whom this offer was made apparently regarded the stock then as of little value.

■ The change in the value of the stock, under the circumstances here disclosed, no longer entitles the appellants to the aid of a court of equity. Wetzel v. Minnesota Ry. Transp. Co., 169 U. S. 237, 18 S. Ct. 307, 42 L. Ed. 730; Abraham v. Ordway, 158 U. S. 416, 420, 15 S. Ct. 894, 39 L. Ed. 1036. If the interveners, who were denied intervention in the Bogert Case, were guilty of laches, there is more reason to successfully charge laches against the present appellants. It was more than 2½ years later that the appellants began this suit. They might have had the relief given to the Bogert stockholders, if they had been active. The appellee purchased all the new stock under the reorganization agreement, including that owned by the Bogert plaintiffs. It was after that purchase that the present appellants commenced this suit.

■ The thirty-ninth paragraph of the bill alleges that the appellants are similarly situated to the plaintiffs in the Bogert Case, and it is urged that this allegation must be accepted as true upon this motion. But the other facts alleged in the complaint do not warrant such a conclusion. Pierce Oil Corp. v. City of Hope, 248 U. S. 498, 500, 39 S. Ct. 172, 63 L. Ed. 381; Portsmouth, etc., Co. v. United States, 260 U. S. 327, 337, 43 S. Ct. 135, 67 L. Ed. 287. Had the appellants been entitled to any benefits from the Bogert decree, they would have found it unnecessary to prosecute the present suit. That suit, to which some of them were denied intervention, in no way excuses their laches. The rule is well stated in Abraham v. Ordway, 158 U. S. 416, 420, 15 S. Ct. 894, 895 (39 L. Ed. 1036):

"The property in dispute, it may well be assumed, has greatly appreciated in value since Mrs. Ordway's purchase, which was more than 10 years prior to this suit. It is now too late to ask assistance from a court

of equity. The relief sought cannot be given consistently with the principles of justice, or without encouraging such delay in the assertion of rights as ought not to be tolerated by courts of equity. Whether equity will interfere in cases of this character must depend upon the special circumstances of each case. Sometimes the courts act in obedience to statutes of limitations; sometimes in analogy to them. But it is now well settled that, independently of any limitation prescribed for the guidance of courts of law, equity may, in the exercise of its own inherent powers, refuse relief where it is sought after undue and unexplained delay, and when injustice would be done, in the particular case, by granting the relief asked."

See Johnson v. Atlantic, G. W. I. Transit Co., 156 U. S. 618, 15 S. Ct. 520, 39 L. Ed. 556; Ancient Egyptian Arabic Order v. D. W. Michaux, 49 S. Ct. 485, 73 L. Ed. 931; Patterson v. Hewitt, 195 U. S. 309, 25 S. Ct. 35, 49 L. Ed. 214; Brown v. Buena Vista County, 95 U. S. 157, 24 L. Ed. 422; Metropolitan S. S. Co. v. Eastern S. S. Lines, Inc. (C. C. A.) 16 F.(2d) 424.

The court below correctly held that, at this late date, it could not aid the appellants in their belated attempt to participate in the profits of the appellee, when they would not share the expenses with others in actively seeking relief.

Decree affirmed.