**CITY OF SAN ANTONIO et al. v. ROBERT THOMPSON & CO., Inc. (No. 8317.)**

Court of Civil Appeals of Texas. San Antonio. Nov. 13, 1929.

Rehearing Denied Jan. 22, 1930.

Joseph Ryan, of Austin, and T. D. Cobbs, Jr., of San Antonio, for appellants.

Douglas, Carter & Black, of San Antonio, for appellee.

SMITH, J. The ordinances of the city of San Antonio prohibit the operation of what is commonly known, and therein described, as "drive-in gasoline filling stations," within the "first fire limits" of the city, also therein described. Such stations are defined in the ordinance to be "a station the construction, arrangement or location of which is such that the general public or customers of such station are invited or required, in order to procure gasoline, oil, naphtha, grease, or other auto supplies, to drive from a street or public highway for vehicles upon or across a public sidewalk or sidewalks in entering such station and to drive upon or across a public sidewalk or sidewalks in emerging from and leaving said station in order to again reach a street or public highway." It is further provided by ordinance that such stations may be constructed and operated anywhere within the city limits outside of said first fire zone, upon permits therefor to be issued by the city commission, but that the issuance of such permits shall be subject to the following regulations: "Any person, firm or corporation desiring to establish, construct or operate a drive-in filling station shall file a petition with the Commission of the City of San Antonio, describing the location where it is desired to establish, construct or operate said station: which petition, plans and all other facts in connection therewith shall be considered by the said Commission; and, after said consideration, if there be no limitation by covenant running with the land, of the use for the purpose herein contemplated, the City Commissioners may, in their discretion, approve the location of the filling station at that place; or they may, in their discretion, refuse a permit for the location of the filling station at that place, if in their opinion, the location, plans and specifications do not conform to this ordinance; or that the safety, the health, the comfort, the convenience, the order, or the good government of the City will be adversely affected by the granting of said permit."

Robert Thompson & Co., a corporation, made application, in accordance with the foregoing regulation, for a permit to construct, for operation, a drive-in filling station upon a lot owned by it and located at the corner of McCullough and Mistletoe avenues, which is without the first, or prohibited, fire zone. It is conceded that the ordinances in question were duly enacted and in effect, and that Thompson & Co's application was, in form, substance, and effect, in compliance with the procedure prescribed therefor in the above-quoted ordinance. But the board of city commissioners, upon consideration, refused to issue the permit, whereupon the applicant brought this action for a mandatory injunction requiring them to issue it. The injunction was issued as prayed for, and the city and its governing board have appealed.

In its pleadings appellee attacked the action of the board upon the grounds, first, that the city authorities acted willfully, arbitrarily, capriciously, and without reason, in refusing to issue the permit, and, second, that the

ordinance is void, because it vests the commission with arbitrary and unrestrained power to wrongfully, arbitrarily, capriciously, and unreasonably deprive appellee of the lawful use of its property. The trial court heard evidence upon the first contention, and found against appellee thereon, but concluded that the ordinance was void on its face as a matter of law, in so far as it gave the governing board the power complained of.

■ The sole question presented in this appeal, therefore, is that of whether or not a city may, by ordinance, lawfully vest in its board of commissioners the discretionary power to refuse a permit for the construction and operation of a drive-in filling station at any particular place within the city limits, if, within the opinion of the board, "the safety, the health, the comfort, the convenience, the order, or the good government of the City will be adversely affected by the granting of such permit."

It is concisely, and we believe correctly, said by counsel in appellants' brief, that the charter of the city of San Antonio "gives its governing body the right to enact all ordinances not repugnant either to the charter or to the Constitution and laws of the State; to do all acts and make all·regulations deemed necessary for the protection and promotion of health and abate all nuisances which may impair or affect the public health or comfort, in such manner as may be deemed expedient; to direct the location of all establishments where noisome, offensive or unwholesome matter, is liable to accumulate; to establish a police force, to regulate and control sidewalks; to regulate construction of buildings, etc.; to establish and maintain a fire department and make as well as enforce all regulations for the prevention, spread and extinguishment of fires as may be deemed expedient; and generally to have full police power. It was in pursuance of said charter powers that the ordinances were enacted."

The specific finding which controlled the trial court's decision is: "The City ordinance in question * * * is void and invalid, as a matter of law, in so far as it bestows unrestrained discretion on the Commission to grant or refuse permits for gasoline filling stations, in that it is indefinite, uncertain, and provides no certain legal criterion upon which the City may act, and vests the City authorities with arbitrary powers, and because it permits, wrongfully, the arbitrary, capricious and unreasonable depriving of the lawful use of property. * * *"

■■ It must be conceded that the business of operating a gasoline filling station is a lawful one, and necessary in these times, and therefore it does not constitute a nuisance per se. Any legislative act which declared it a nuisance per se, or had that ultimate effect, would be void upon its face.

But it must be further conceded that, because of its nature, the business is such as to render it subject to reasonable regulation under the general police powers accorded to cities. Pierce Oil Corp. v. City of Hope, 248 U. S. 498, 39 S. Ct. 172, 63 L. Ed. 381; Standard Oil Co. v. City of Maryville, 279 U. S. 582, 49 S. Ct. 430, 73 L. Ed. 856.

If the ordinance here in question has ·the effect of prohibiting the operation of filling stations, in the city of San Antonio, or of empowering the board of commissioners to absolutely prohibit their operation therein, then the enactment cannot be upheld.

But if the ordinance merely grants to the board the power to refuse permits for the operation of such stations upon particular locations in the city, where such operation would injuriously affect· the "safety, health, comfort, convenience, order or good· government" of the city, then the object to be accomplished is wholesome, and the means provided valid.

For the power of determining such locations must rest somewhere, in some responsible municipal authority. And the grant of such power must be general, and flexible, to be applied only in particular cases, as they arise, since it would be unreasonable, impracticable, impossible in fact, to so frame a charter provision, or ordinance, as to specifically designate each location in the city as being suitable or unsuitable, as a site for the operation of such business, or to lay down a specific guide for selecting or rejecting such locations. The fitness of each location must necessarily depend upon various governmental considerations as applied peculiarly to it. These considerations must be referred to and resolved by some active authority in the government, which is responsible and accountable to the public for the fair, faithful, and proper performance of the duty so delegated.

■ It must be presumed that such authority will fairly and honestly discharge that duty. But, when it is clearly made to appear that under the guise of the granted power it has acted arbitrarily, or capriciously, or fraudulently, its ·acts become unlawful, and the courts will nullify them; not because the power under which it has acted is invalid, however, but because it has acted beyond the scope of the grant. We think this view of the case is supported by controlling authorities: Dillon Mun. Corp. (5th Ed.) § 598; Engel v. O'Malley, 219 U. S. 128, 31 S. Ct. 190, 55 L. Ed. 128; Lieberman v. Van De Carr, 199 U. S. 552, 26 S. Ct. 144, 50 L. Ed. 305; Western Union Tel. Co. v. Richmond, 224 U. S. 167, 32 S. Ct. 449, 56 L. Ed. 710; Fischer v. St. Louis, 194 U. S. 361, 24 L. Ed. 673, 48 L. Ed.

1018; Jacobson v. Massachusetts, 197 U. S. 11, 25 S. Ct. 358, 49 L. Ed. 643, 3 Ann. Cas. 765; Euclid v. Ambler Realty Co., 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016; Ex parte Broussard, 74 Tex. Cr. R. 333, 169 S. W. 660, L. R. A. 1918B, 1091, Ann. Cas. 1917E, 919; Id., 241 U. S. 639, 36 S. Ct. 285, 60 L. Ed. 1215; Zahn v. Board, 274 U. S. 325, 47 S. Ct. 594, 71 L. Ed. 1074; Gorieb v. Fox, 274 U. S. 603, 47 S. Ct. 675, 71 L. Ed. 1228, 53 A. L. R. 1210; King v. Guerra (Tex. Civ. App.) 1 S.W.(2d) 373, 376; Xydias Co. v. Houston (Tex. Civ. App.) 185 S. W. 415; Hanzal v. San Antonio (Tex. Civ. App.) 221 S. W. 237, 239; State v. Cohen, 73 N. H. 543, 63 A. 928; Racine v. Dist. Court, 39 R. I. 475, 98 A. 97; Herring v. Stannus, 169 Ark. 244, 275 S. W. 321; Lane v. Fleming, 129 Wash. 646, 225 P. 647, 34 A. L. R. 500; Yee Bow v. Cleveland, 99 Ohio St. 269, 124 N. E. 132, 12 A. L. R. 1424; Buffalo v. Hill, 79 App. Div. 402, 79 N. Y. S. 449; Cutsinger v. Atlanta, 142 Ga. 555, 83 S. E. 263, L. R. A. 1915B, 1097, Ann. Cas. 1916C, 280; Ex parte Whitley, 144 Cal. 167, 77 P. 879, 1 Ann. Cas. 13.

Appellee cites a number of cases as establishing a contrary rule, but we do not regard those authorities as decisive of the specific question presented in this appeal. Those cases must be restricted in their effect to the facts and ordinances peculiar to them; those decided upon facts are not applicable in this case, which turns wholly upon the bald question of law, as to whether or not the ordinance here involved is rendered void by its own terms, as a matter of law, without regard to the manner of its enforcement. And in none of the Texas cases relied upon by appellee is the enactment so like the one here in question as to make those decisions controlling here.

In the Texas cases cited by appellee much is said of the Supreme Court case of Spann v. City of Dallas, 111 Tex. 350, 235 S. W. 513, 19 A. L. R. 1387, the apparent disposition being to extend the effect of that decision far beyond, or beside, its true scope. In the Spann Case the question decided was, as stated by Chief Justice Phillips in the opinion in that case, "the validity of an ordinance of the City of Dallas, prohibiting, under penalty, the construction of *any* business house within what the ordinance denominates a residence district of the City, *except with the consent of three-fourths of the property owners of the district,* and on the building inspector's approval of the *design* of the proposed structure." (Italics ours.) That question was, of course, quite different from the one presented here. In that case, again quoting Judge Phillips: "The ordinance takes no heed of the character of business to be conducted in the store house which it condemns. It disregards utterly the fact that the business may be legitimate, altogether lawful, in no way harm-

ful and even serve the convenience of the neighborhood. Its prohibition is absolute. No business house of any kind, for the sale of goods of any character, or for the conduct of any business whatsoever, is its command, shall be permitted within 'a residence district' without the consent of three-fourths of the property owners of the district, and, in addition, the building inspector's approval of the design of the structure. Even if the necessary consent of the property owners is obtained, and though the building is to be one safe and substantial, yet, according to the ordinance, if its architectural design does not accord with the taste of the building inspector, its construction is no less positively interdicted. No rule, no standard, no regulation of any kind is given whereby the applicant may know to what particular design of building he must conform. If the design, whatever its merits, does not suit the inspector, it is within his uncontrolled power to prohibit the building." In that case the ordinance was made to apply indiscriminately to every business of every character, while the ordinance here involved is restricted in its operation to one specified business, concededly of a character subject to police regulation and restriction. In that ordinance the power of prohibition was delegated to private individuals, who, accountable to none but themselves, and without restraint in the ordinance, were permitted to defeat the permit upon considerations of self-interest, individual caprice, prejudice, sentiment, or any other motive they might choose to exercise; whereas, in the ordinance here involved, the power to grant or deny permits was lodged in the governing board of the municipality upon considerations restricted to those of the safety, health, comfort, convenience, order, or good government of the city, and who are accountable to the public for their administration of the trust confided in them. In the Dallas ordinance the power of defeating the permit was lodged in the city building inspector, whose "approval" of the "design" of the proposed improvement was left wholly to his judgment, discretion, caprice, or any other consideration he might secretly or otherwise exercise, without reference to the stability, safety, or symmetry of the proposed structure, and with no rule, standard, or regulation in the ordinance to restrict his course, or to apprise the applicant of the design to which he must conform his proposed structure; whereas, in the San Antonio ordinance, the plans and specifications required of applicants were clearly and fully set out in the ordinance, and were in fact fully complied with by appellee in its application. So, the decision in the Spann Case has no application in this case, and can be of no value in determining this appeal.

We see no occasion for prolonging this opinion. We conclude that the ordinance in ques-

tion is not void upon its face as a matter of law, but that, when fairly and reasonably administered, it is a valid exercise of the police powers delegated to the city of San Antonio, and should be upheld as against the objections urged against it in this appeal.

The judgment of the trial court is reversed, and judgment will be here rendered setting aside the injunction issued below.