## CITY OF SAN ANTONIO et al. v. HUMBLE OIL & REFINING CO.

### No. 8395.

Court of Civil Appeals of Texas. San Antonio.
March 19, 1930.

Rehearing Denied May 14, 1930.

T. D. Cobbs, Jr., and C. K. Quin, both of San Antonio, for appellants.

Wayne Davis and W. S. Anthony, both of San Antonio, and R. E. Seagler, of Houston, for appellee.

SMITH, J.

This appeal involves the validity of the ordinance of the city of San Antonio designed to regulate the location, construction, and operation of drive-in gasoline filling stations. In the judgment here appealed from, the controlling sections of said ordinance were held to be unconstitutional and void. The trial court specifically condemned subdivision (B), § 7, of the Ordinance of January 23, 1919, as amended on September 26, 1927, notwithstanding this court had previously, in the case of City of San Antonio v. Robt. Thompson & Co., 23 S.W.(2d) 796, 799, upheld the validity of said subdivision, as against the very objections sustained below. Said ordinance provides as follows: "(B) Section Seven: Except within the limits where drive-in filling stations are prohibited, as provided in Section Three of this ordinance; any person, firm or corporation desiring to establish, construct or operate a drive-in filling station shall file a petition with the Commission of the City of San Antonio, describing the location where it is desired to establish, construct or operate said station; which petition, plans and all other facts in connection therewith shall be considered by the said Commission; and, after said consideration, if there be no limitation by covenant running with the land, of the use for the purpose herein contemplated, the City Commissioners may, in their discretion, approve the location of the filling station at that place; or they may, in their discretion, refuse a permit for the location of the filling station at that place, if in their opinion, the location, plans and specifications do not conform to this ordinance; or that the safety, the health, the comfort, the convenience, the order, or the good government of the City will be adversely affected by the granting of said permit."

We adhere to the decision in the Thompson Case, and hold again that that section of the ordinance "is not void upon its face as a matter of law."

The trial court also struck down subdivision (E), § 10, of said ordinance, which provides: "No permit for the erection or operation of a drive-in filling station shall be granted within three hundred (300) feet of any public school, or of any private school, or of any church, or of any hospital, or of any public playground, or of any public park, or within one hundred and fifty (150) feet of any exist-

ing filling station or of the place where a permit shall have been granted; measured from the nearest points of each property."

The court also condemned as unconstitutional subdivision (C), § 8, of said ordinance, which is as follows: "The permit shall not be transferred without permission of the City Commission given after the filing of an application therefor. The permit may be revoked by the City Commission in its discretion, because of the failure of the licensee to comply with the ordinances of the City of San Antonio or the laws of the State of Texas affecting things pertaining to the construction, and operation of the station, its appurtenances, appliances and equipment. The permit shall became void unless actual construction of the station, and the installation of equipment, shall begin within ninety (90) days after the issuance of the permit and prosecuted diligently in good faith to completion, according to the plans and specifications."

The court held that all of said provisions of the ordinance "are unconstitutional and void, being arbitrary and unreasonable," and in contravention of the Fifth and Fourteenth Amendments to the Federal Constitution, and of sections 10, 17, and 19 of article 1 of the State Constitution.

It is conceded, as stated in appellants' brief, that the charter of the city of San Antonio "gives its governing body the right to enact all ordinances not repugnant either to the charter or to the Constitution and laws of the State; to do all acts and make all regulations deemed necessary for the protection and promotion of health and abate all nuisances which may impair or affect the public health or comfort, in such manner as may be deemed expedient; to direct the location of all establishments where noisome, offensive or unwholesome matter, is liable to accumulate; to establish a police force; to regulate and control sidewalks; to regulate construction of buildings, etc.; to establish and maintain a fire department and make as well as enforce all regulations for the prevention, spread and extinguishment of fires as may be deemed expedient; and generally to have full police power. It was in pursuance of said charter powers that the ordinances were enacted."

It was recited in the emergency clause of said ordinance that the same "shall take effect upon its passage because the public safety, comfort and welfare is being menaced by the construction, operation and maintenance of many filling stations, and the cutting of sidewalks, and the increasing of traffic disorders at or near the street intersections."

■■ It is a matter of common knowledge that gasoline filling stations are primarily and chiefly used for the storage and distribution of oils, gases, and other more or less malodorous and highly inflammable or explosive substances; that the operation of such stations naturally and necessarily causes more or less congestion, and particularly confusion, of traffic; that drive-in stations, such as those sought to be regulated by these ordinances, divert public vehicular traffic from the streets to sidewalks, thereby interrupting and creating an additional menace to pedestrian traffic. It is true generally that the modern filling station is constructed and operated with the minimum of danger from fire or explosion and unsightly, malodorous, and slippery accumulations of oils and gases are reduced until negligible. Such stations have become not only convenient, but necessary, and sometimes are even "things of beauty," if not "joys forever." But the inflammable and explosive substances, the storage, handling, and dispensation thereof, are still essential to the operation of these stations; reservoirs and smaller storage facilities must still be filled from great motor tanks, which roll over, occupy, obstruct sidewalks, together with an irregular stream of other trucks and motor vehicles passing into and out of the stations for air, water, gas, oil, and every character of service incident to the business. These conditions, known of all men, render these stations peculiarly subject to police regulation. Can it be said, as appellee contends, and the trial court held, in effect, that, without consulting any public authority, any person may build and operate a drive-in gasoline filling station immediately adjacent to any dwelling, theater, hospital, school, or church in the city of San Antonio, just because he happens to own an adjoining lot? If he has this unbridled license, then there is nothing else to be said. But if he has not such license, but must submit to some sort of municipal regulation, then who shall determine the nature and extent of such regulation? Certainly not the courts, for it is a purely governmental function, to be exercised, not by the courts, but by the governing board of the municipality. Here the safety, health, welfare of the public must be considered, promoted, protected against the inconveniences and dangers of the storage, use, waste, and distribution of inflammable and noxious substances, the congestion and confusion of traffic, the unusual and particularly dangerous use of sidewalks for promiscuous vehicular traffic and corresponding exclusion and diversion therefrom of pedestrian traffic. We are of the opinion that in adopting and enforcing the ordinances in question the city commissioners were but exercising powers and performing duties clearly granted them under the charter of the city, and that those ordinances do not contravene either federal or state constitutional or statutory provisions. City of San Antonio v. Thompson (Tex. Civ. App.) 23 S.W.(2d) 796, and authorities there cited; Powell v. Penn., 127 U. S. 678, 8 S. Ct. 992, 1257, 32 L. Ed. 253; Stand-

ard Oil Co. v. Marysville, 279 U. S. 582, 49 S. Ct. 430, 73 L. Ed. 856; Pierce Oil Corp. v. Hope, 248 U. S. 498, 39 S. Ct. 172, 63 L. Ed. 381; Gundling v. Chicago, 177 U. S. 183, 20 S. Ct. 633, 44 L. Ed. 725; Wilson v. Eureka City, 173 U. S. 32, 19 S. Ct. 317, 43 L. Ed. 603; Davis v. Mass., 167 U. S. 43, 17 S. Ct. 731, 42 L. Ed. 71; New York ex rel. Lieberman v. Van De Carr, 199 U. S. 552, 26 S. Ct. 144, 50 L. Ed. 305; Focke v. Heffron (Tex. Civ. App.) 197 S. W. 1027; People v. Ericsson, 263 Ill. 368, 105 N. E. 315, L. R. A. 1915D, 607, Ann. Cas. 1915C, 183; People v. Oak Park, 266 Ill. 365, 107 N. E. 636; McIntosh v. Johnson, 211 N. Y. 265, 105 N. E. 414, L. R. A. 1915D, 603; State v. Dauben, 99 Ohio St. 406, 124 N. E. 232; Ninth Street Imp. Co. v. Ocean City, 90 N. J. Law, 106, 100 A. 568; Lawrence v. Nissen, 173 N. C. 359, 91 S. E. 1036; In re Russell (Sup.) 158 N. Y. S. 162; Stubbe v. Adamson, 220 N. Y. 459, 116 N. E. 372.

■ It is conceded that the site of the filling station which appellee proposes to construct and operate is located within less than 300 feet of the Beacon Hill Baptist Church. It appears that one W. W. Knight was the owner of said site, that he applied in his own name to the city commission for a permit to construct a filling station on said site. Of course all parties were aware of the proximity of the church, but the city was induced to grant the permit upon the assurance that the church would very shortly be moved to another location, which was not done. It appears also that, when Knight made application for said permit, he did so under a contract with the Humble Oil & Refining Company to transfer the permit, when obtained, and sell and convey the site, to said company at a stipulated price. When the city granted said permit to Knight, he transferred it to the company without express permission of the city commission, and conveyed the site as contracted. The city authorities were aware of this contract, and the city building inspector issued the permit directly to the Humble Company, which began construction thereunder, and had expended $3,500 in such construction when interrupted by this litigation.

It is conceded that the Humble Company proposes to complete and operate said filling station at said location in violation of said ordinance in these respects: First, it has made no application to the appropriate authority for a permit for that purpose, although holding, by transfer, the permit granted in response to Knight's application; second, that the permit obtained by Knight was transferred to the Humble Company "without permission of the City Commission given after the filing of an application therefor"; and, third, that said location is within 300 feet of the Beacon Hill Baptist Church. Upon the ground of these violations of the ordinance, the city commission subsequently passed an ordinance revoking the permit held by the Humble Company, which obtained an injunction restraining the city from interfering with the construction and operation of said station by that company. The disposition of the appeal, then, depends upon the validity of the ordinances, and the actions of the city commissioners thereunder.

The permit was illegally issued in the first instance, since it authorized the permittee to construct the station upon a location within 300 feet of the church, which is expressly prohibited by ordinance. Of course the permittee and his transferee were aware of this vice in the permit, and of the lack of power in the city commissioners to authorize a plain violation of the ordinance, and the holder proceeded to expend money in construction with full knowledge of the illegality of his course and of the power and duty of the commission to revoke a permit thus illegally issued. 3 McQuillan, Mun. Corp. § 1008. It appears that the pastor and congregation of Beacon Hill Baptist Church voted to raise no objection to the construction of the station upon the proposed site and expressly "waived in writing" the violation of the ordinance. Obviously, however, this congregation and its pastor, who seemed active in the matter, had no power to "waive" compliance with the law, or legitimate a violation of its provisions; it had no power to excuse the Humble Oil & Refining Company from its duty to obey the law. Nor did the city commissioners have such power. The permit was issued in contravention of the provision of the ordinance prohibiting the granting of such permit to construct a filling station within 300 feet of a church; the permit, after being illegally granted, was transferred to the Humble Company without the express permission of the city commission, which was also prohibited by ordinance. It is true that the mayor and commissioner of fire and police were each personally aware of the transfer and of the contract inducing it, and made no protest thereat. But their conduct in the matter as individuals, however harsh and unjust its effect upon appellee, cannot be used to prejudice or destroy the rights of the public to require enforcement of valid laws and ordinances as written.

The judgment is reversed, and the cause remanded.