423 F.2d 548
 WONDERLAND VENTURES, INC., Plaintiff-Appellee,
v.
CITY OF SANDUSKY, The City Manager of The City of Sandusky
and The City Commission of The City of Sandusky,
Defendants-Appellants.
WONDERLAND VENTURES, INC., Plaintiff-Appellee,
v.
CITY OF FREMONT, The Mayor of The City of Fremont and The
Council of The City of Fremont, Defendants-Appellants.
 Nos. 19436, 19437.
 United States Court of Appeals, Sixth Circuit.
 March 26, 1970.
 
 Roger H. Smith, Toledo, Ohio, for defendants-appellants; Eastman, Etichter, Smith & Bergman, Toledo, Ohio, on brief.
 J. Edward Goff, Toledo, Ohio, for plaintiff-appellee.
 Before PHILLIPS, Chief Judge, PECK, Circuit Judge, and WILSON,[1] District Judge.
 PHILLIPS, Chief Judge.
 
 
 1
 These two cases involve the validity of ordinances adopted by the cities of Sandusky and Fremont, Ohio, undertaking to regulate and impose a gross receipts tax on community antenna television (CATV). District Judge Don J. Young held the ordinances to be unconstitutional and void and issued an injunction in each of the two cases enjoining the enforcement of the ordinances against plaintiff-appellee, Wonderland Ventures, Inc. The two cities appeal. We affirm.
 
 
 2
 In United States v. Southwestern Cable Co., 392 U.S. 157, 88 S.Ct. 1994, 20 L.Ed.2d 1001 the Supreme Court held that the Federal Communications Commission (FCC) has jurisdiction over CATV and upheld FCC rules applicable to this industry. This ruling was followed and applied by this Court in Telerama, Inc. v. United States, 419 F.2d 1047 (6th Cir.).
 
 
 3
 Appellee proposes to use the facilities of Ohio Bell Telephone Company to provide CATV services in Sandusky and Fremont. On April 12, 1965, the telephone company entered in separate contracts with appellee under the terms of which the telephone company agreed to install on its facilities the necessary additional cables to provide CATV service within these two cities. Under the plans for this service signals would be picked up off the air (and not by microwave facilities) from Pennsylvania, Michigan, Ohio, and other States as well as the Province of Ontaria, Canada, and transmitted to subscribers in and near Sandusky and Fremont. Appellee obligated itself to pay certain nonrecurring costs of installing the transmission cable and equipment for the CATV systems over the telephone company's facilities and thereafter to pay a monthly rental to the telephone company. Appellee acquired sites in the area of each city upon which it plans to construct the antenna towers and head-end equipment which are necessary parts of the system.
 
 
 4
 The telephone company filed a private line tariff with the Ohio Public Service Commission covering the charges to be made for providing CATV service throughout the State of Ohio. This private line tariff was incorporated by reference into the Sandusky and Fremont contracts between appellee and the telephone company. Prior to adoption of the city ordinances here in question, the engineering and design layout for both cities had been completed and approved and substantial equipment had been ordered. Some poles had been readied for installation in Sandusky and a substantial amount of coaxial cable and amplifiers had been installed in Fremont.
 
 
 5
 The Sandusky ordinance would require appellee to pay to the city a sum equivalent to three per cent of the gross proceeds from monthly charges for CATV service. The Fremont ordinance requires each CATV applicant to submit a bid based upon a percentage of gross receipts to be paid to the city for units of 1,000 or more subscribers.
 
 
 6
 The two ordinances which are the subjects of this litigation are almost identical with respect to their salient provisions. They are summarized in the brief of appellants as follows:
 
 
 7
 '1) No person (including corporations) may operate a community antenna television system within the respective cities unless such person shall have obtained a franchise to operate the system from the respective city.
 
 
 8
 '2) A person desiring a franchise to operate a community antenna television system within the respective cities, must inter alia submit an application to cities, which application shall contain the following information:
 
 
 9
 'a. Give names and addresses of the persons interested in the application, including partners, if a partnership is the applicant, and officers of the corporation, if the applicant is a corporation. (The City of Sandusky requires shareholders owning 10% Or more of the shares of the corporation to be named.)
 
 
 10
 'b. The proposed plan of construction and method of distribution of the signals.
 
 
 11
 'c. A schedule of the rates to be charged to customers.
 
 
 12
 'd. A current profit and loss statement and balance sheet of the applicant's business certified by a certified public accountant.
 
 
 13
 'e. Procure liability insurance against property damage and bodily injury or death.
 
 
 14
 'f. A performance bond in the sum of $10,000 guaranteeing payment of all sums which may at any time be due to the respective cities under the terms of the franchise and guaranteeing faithful performance of the obligations under the franchise.
 
 
 15
 '3) Under the Fremont ordinance, a schedule of the amounts proposed to be paid to the city by the franchise, which amounts are to be based on a percentage of the gross receipts for monthly service charges for units of 1,000 or more subscribers, is to be submitted to the city. It is contemplated that franchises be let on a bid basis.
 
 
 16
 '4) Under the Sandusky ordinance, the franchisee is to pay to the City of Sandusky a sum equivalent to 3% Of the gross proceeds from the monthly charges.
 
 
 17
 '5) Under both ordinances, operation of a cable television system without a franchise is deemed to be a misdemeanor.
 
 
 18
 'Both the Sandusky and the Fremont ordinances contained other provisions not deemed to be relevant to this appeal.'
 
 
 19
 Appellee contends that all regulation of CATV has been preempted by the federal government to the exclusion of the states and their political subdivisions. In considering this question the District Court concluded that although 'much of the state and local regulation of CATV will ultimately fall under the Supremacy Clause when the FCC continues to expand its regulations in the field,' all regulation of CATV has not been preempted by the 1934 Communications Act and FCC regulations.
 
 
 20
 In view of our disposition of the issue of the invalidity of the ordinances, we do not find it necessary to determine on this appeal to what extent regulation of CATV has been preempted by the Federal Government, or to what extent reasonable regulations may be imposed by municipal ordinance. This issue is dealt with in some detail in TV Pix, Inc. v. Taylor, 304 F.Supp. 459 (D.Nev.), aff'd, 396 U.S. 556, 90 S.Ct. 749, 24 L.Ed.2d 746 (Feb. 2, 1970). Neither do we find it necessary to pass upon other issues dealt with in the comprehensive opinion of the District Court. We hold the two ordinances here in question to be invalid on two grounds: (1) because they impose a gross receipts tax upon proceeds from interstate commerce in violation of the commerce clause of the Constitution of the United States, art. I, 8, Clause 3, Fisher's Blend Station, Inc. v. State Tax Commission, 297 U.S. 650, 56 S.Ct. 608, 80 L.Ed. 956; Gibbons v. Ogden, 22 U.S. (9 Wheat) 1, 6 L.Ed. 23; and (2) because they do not contain definite standards for regulation and administration. Interstate Circuit v. Dallas, 390 U.S. 676, 690, 88 S.Ct. 1298, 20 L.Ed.2d 225; People of State of New York ex rel. Lieberman v. Van De Carr, 199 U.S. 552, 26 S.Ct. 144, 50 L.Ed. 305; Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220.
 
 
 21
 Affirmed.
 
 
 
 [1]
 Honorable Frank W. Wilson, Judge, United States District Court for the Eastern District of Tennessee, sitting by designation